THE VILLAGE OF GLENVIEW, Plaintiff-Appellee, v. LORNA M. RAMAKER, Defendant-Appellant.

First District (4th Division)   No. 1—94—1935

Opinion filed June 27, 1996.

Bryan C. Wittman, of Chicago, for appellant.

Richard Lee Stavins and Jeffrey M. Randall, both of Robbins, Salomon & Patt, Ltd., of Chicago, for appellee.

JUSTICE CAHILL delivered the opinion of the court:

We review the power of the Village of Glenview to prohibit a resident from keeping a pig as a domestic pet within the village corporate limits. The village charged Lorna M. Ramaker with keeping a swine in violation of section 4.7 of the Glenview Municipal Code. The ordinance reads: "No person shall keep or suffer to be kept any swine or poultry in the Village." Glenview Municipal Code § 4.7 (1959).

Ms. Ramaker obtained a Vietnamese pig as a household pet in March 1993. She wrote to the president of the board of trustees of the Village of Glenview on July 16, 1993, asking that section 4.7 of the Municipal Code be amended to exclude miniature Vietnamese pigs from its scope. She was served at her home with a complaint on March 14, 1994, alleging violation of the ordinance. She again wrote to the board asking to be placed on the agenda for the village meeting on April 5, 1994. The record does not show the result of that meeting, but on April 12, 1994, the assistant village manager wrote to Ms. Ramaker. His letter referred to her request for a reconsideration of the board's animal regulations and informed her that before the board would reconsider its position Ms. Ramaker would be required to submit a citizen's petition in support of a revised ordinance. On April 26, 1994, Ms. Ramaker filed petitions with the board signed by over 400 Glenview residents asking the board to allow the "Ramaker family to keep and care for their family pet." The record is silent on further board action.

Ms. Ramaker appeared in the trial court on April 29, 1994, for a hearing on the complaint served on March 14, 1994. The court granted her a continuance on condition that she remove her pet from Glenview. The matter was continued until May 18, 1994. On that date the trial court found Ms. Ramaker guilty of violating section 4.7 of the Glenview ordinance and fined her $500.

On appeal Ms. Ramaker argues that her Vietnamese pig is a household pet, not an agricultural animal contemplated by the term "swine" in the ordinance. She argues in the alternative that the ordinance is unconstitutional if read to include household pets.

■ The sparse record before us prompted the village on appeal to argue that the defendant failed to preserve the issues identified for review. We disagree. Though there is no transcript of trial proceedings, Ms. Ramaker filed a two-page "brief and legal argument" in the trial court and included it in the record on appeal. The brief frames the issue before the court as one of statutory construction, and raises constitutional concerns as well, adequate for appellate review. The construction of a statute, ordinance, or constitutional provision is a question of law which is independently decided by the reviewing court. *Monahan v. Village of Hinsdale*, 210 Ill. App. 3d 985, 993, 569 N.E.2d 1182 (1991).

■ We first address the argument that the village ordinance, enacted in 1959, uses terms—poultry and swine—that imply only an agricultural and commercial prohibition. In *City of Peoria v. Ohl*, 262 Ill. App. 3d 522, 523, 636 N.E.2d 1029 (1994), the Third District of the Appellate Court was called upon to interpret the following language

from a municipal ordinance employed to prohibit the keeping of a pet pig: "all farm animals, including, but not limited to, members of the swine, ovine, bovine, caprine or equine families, poultry and rabbits, shall be prohibited." The court observed that the ordinance language was part of a section of the city code that prohibited farming on residentially zoned land. The court concluded that the ordinance only prohibited the animal classes named when kept for farming purposes.

Ms. Ramaker suggests a similar interpretation for the ordinance language under review in this case, but cites to nothing in the current Glenview code or its legislative history to support a judicial finding that the aim of the ordinance was only a limitation on farming. "Farm animal," a term relied upon by the court in *Ohl*, does not appear in the Glenview ordinance, nor does Ms. Ramaker argue that the ordinance is part of the code that prohibits farming or agriculture in residential areas. Absent the farming context, we find *Ohl* distinguishable.

Without a farming or agricultural context for the ordinance, Ms. Ramaker's argument that "swine" should not be read to include pets loses its weight. Statutory construction begins with the plain meaning of the language employed and ends there when the meaning is clear. *People ex rel. Baker v. Cowlin*, 154 Ill. 2d 193, 197, 607 N.E.2d 1251 (1992). There is no dispute that the word used in the ordinance and the word Ms. Ramaker uses to describe her pet are synonymous. Webster's Third New International Dictionary 1713, 2312 (1986). Whatever pejorative (or friendly) nuance one detects in either term is colloquial—and irrelevant to statutory construction.

■ We find Ms. Ramaker's constitutional arguments unpersuasive as well. She argues that the ordinance fails to identify a legitimate government interest, bears no reasonable relationship to such an interest had one been identified, is not definite enough to put a reasonable person on notice as to what the law requires, and offers no rational basis for banning her pet while allowing other household pets.

Home rule units such as Glenview may exercise powers and functions to regulate the public health, safety, morals and welfare, and those powers and functions are to be read liberally. Ill. Const. 1970, art. VII, § 6(a); 65 ILCS 5/1—1—10 (West 1994); 65 ILCS 5/1—2—1 (West 1994). Home rule municipalities have broad discretion to determine what the interests of the public welfare require and to take the steps to secure those interests. Courts will not disturb an exercise of police power merely because there is room for a difference of opinion about the wisdom or necessity of its exercise. *Kalodimos v.*

*Village of Morton Grove*, 113 Ill. App. 3d 488, 447 N.E.2d 849 (1983), *aff'd*, 103 Ill. 2d 483, 470 N.E.2d 266 (1984). The power of municipalities to enact police ordinances, to regulate and abate nuisances generally, to regulate for the protection of public health, safety, welfare and morals, and to regulate and abate the keeping of animals as a matter of public health and safety is grounded in the Illinois Constitution, statutes, and case law. Ill. Const. 1970, art. VII, § 6(a); 65 ILCS 5/1—2—1 (West 1994); 65 ILCS 5/11—1—1 (West 1994); 65 ILCS 5/11—20—5 (West 1994); 65 ILCS 5/11—60—2 (West 1994); *Roberts v. Ogle*, 30 Ill. 459 (1863); *City of Des Plaines v. Gacs*, 65 Ill. App. 3d 44, 382 N.E.2d 402 (1978). Under these firmly grounded principles, we believe the Glenview ordinance is a legitimate exercise of the village police power with a reasonable relationship to government interest and a rational basis for pet classification.

The *Kalodimos* decision that courts should not second-guess legislative bodies merely because there is room for an honest difference of opinion about the wisdom or necessity of a police ordinance is a venerable restraint in Illinois law. See *Roberts*, 30 Ill. 459. A leisurely summer drive from downtown Chicago along the main road to the Wisconsin border will take you through a score of towns that reflect diverse views about the world we live in: towns with friendly neighborhood taverns and towns that prohibit them; towns with parking regulations as complex and mysterious as the federal tax code next door to genial towns that allow you to park wherever there appears to be room; towns with varying automobile speed limits, some enforced robustly, others casually; towns where neon signs flourish and others where neon is an unwelcome gas. There are parks where you may walk your dog, but not smoke your cigar, and parks where the law is the other way around. We learn from of all this the wise message of *Kalodimos* going back to *Roberts*: resolution of such honest differences of taste and opinion—of what we hold amiable and what we find annoying—is best left to the threshing floor of the local elected body.

■ We affirm the decision of the trial court but vacate the fine of $500 as an abuse of discretion.

The record shows that Ms. Ramaker removed her pet from the village as a condition for a continuance to prepare for trial. It also appears from the briefs that she has complied with the ordinance pending the outcome of this appeal. Where cooperation is shown, compliance has come about, and imposition of a fine would not aid enforcement, a fine is improper. *Harris-Hub Co. v. Pollution Control*

*Board,* 50 Ill. App. 3d 608, 365 N.E.2d 1071 (1977). We impose a nominal fine of $1.

Affirmed in part and vacated in part.

HOFFMAN, P.J., and O'BRIEN, J., concur.