O’NIELL, Chief Justice.
 

 The state is claiming the license tax of 4 cents per gallon, levied by Act No. 6 of 1928 (Ex. Sess.), as amended by Act No. 16 of 1932, on motor fuel sold by the defendant. The defendant is engaged in the oil refining business, manufacturing and selling gasoline and other motor fuels. The tax is claimed on 302 gallons of a product called “tractor distillate” sold by the defendant on the 22d of May, 1933. Tractor distillate is a volatile gas-generating fluid, manufactured from crude oil, and having a flash point below 110 degrees F. It is not “commonly used to propel motor vehicles or motors,” and is not used at all in high-compression motors, such as propel automobiles, but is used in low-compression motors, such as propel tractors used on farms or for constructing levees, etc. In fact, tractor distillate gets its name from its use as a fuel for tractors.
 

 The defendant’s refusal to pay the tax is founded upon the contention that the tax is levied, not upon the sale of “all volatile »gas-
 
 *813
 
 generating liquids having a flash point below 110 degrees F.,” but only upon the sale of such as are “commonly used to propel motor vehicles or motors.” The district judge so ruled, and rejected the state’s demand. The state has appealed from the decision.
 

 The defendant has moved to dismiss the appeal on the ground that the constitutionality or legality of the tax is not in contest; the only question being whether the liquid sold is such as should subject the seller to the payment of the tax. The question at issue, however, is a question of constitutionality or legality of the tax. The dispute is not as to the character or quality of the liquid sold, called “tractor distillate”; the dispute is as to whether the statute shall be con- - strued as levying the tax upon tractor distillate, which is admitted to be a “volatile gas-generating liquid having a flash point below 110 degrees F.,” but not “commonly used to propel motor vehicles or motors.” The defendant contends not only that the statute does not levy the tax upon the sale of any volatile gas-generating liquid having a flash point below 110 degrees F. except that which is “commonly used to propel motor vehicles or motors,” but contends that, if the statute be construed so as to levy the tax upon the sale of such a liquid not “commonly used to propel motor vehicles or motors,” the statute will violate section 16 of article 3, in that the text of the act will be broader than its title, and will violate the equal protection clause in the Fourteenth Amendment of the Constitution of the United States. It is well settled that, in a suit to collect a tax, if the defense be such that a judicial interpretation of the tax statute is necessary to determine whether the tax demanded is levied upon the defendant, the legality of the tax is in contest, and the Supreme Court has appellate jurisdiction. Downs, Tax Collector, v. Dunn, 162 La. 747, 111 So. 82. The motion to dismiss the appeal is therefore overruled.
 

 On the merits, the only question is whether the expression “as defined by law,” in section 22 of article 6 of the Constitution, as amended pursuant to Act No. 219 of 1928, means “as already defined by law,” or leaves the Legislature free to change the definition of “motor fuels.” The section provides for the sources from which the highway fund shall be derived, and, as amended,- it provides, as one of the sources:
 

 “On gasoline, benzine, naphtha and other motor fuels, as defined by law, when sold, used or consumed in the State of Louisiana, there shall be levied a tax not to exceed four cents (40) per gallon, to be collected as prescribed by law.”
 

 At that time the prevailing statute levying the tax on motor fuel, under section 22 of article 6 of the Constitution, was Act No. 142 of 1924, p. 242, which contained this definition (section 1):
 

 “The term ‘motor fuel’ is defined as meaning all volatile gas-generating liquids having a flash point below 110 degrees F., commonly used to propel motor vehicles.”
 

 In Act No. 6 of 1928 (Ex. Sess.) levying the 4 cents tax under the constitutional amendment, motor fuel was defined thus (section 1):
 

 “The term ‘motor fuel’ is defined as meaning all volatile gas-generating liquids having a flash point below 110 degrees F., commonly used to propel motor vehicles or motors.”
 

 
 *815
 
 In State v. Armbruster, 174 La. 914, 142 So. 125, 126, the state claimed the tax on the sale of a low-grade petroleum distillate which was not commonly used to proper motor vehicles or motors, and which was in fact not usable as a motor fuel. The state contended that the qualifying expression “commonly used to propel motor vehicles or motors” merely described the use of the motor fuel, and was not an essential part of the definition; but this court held that that was an essential part of the definition, and consequently that the distillate was not within the definition, even though it was a volatile gas-generating liquid having a flash point below 110 degrees E. The decision was rendered on the 25th of April, and a rehearing was denied on the 23d of May, 1932; and, on the 7th of July, 1932, at a legislative session commenced on the 9th of May, 1932, the Legislature adopted Act No. 16 of 1932, amending the first section of Act No. 6 of 1928 (section 1), and adding seven new sections to the act (section 2). The only change made in the first section of the act was the omission of the words “commonly used to propel motor vehicles or motors” from the definition of “motor fuel.” As amended therefore, the statute (section 1) defines motor fuel thus:
 

 “The term ‘motor fuel’ is defined as meaning all volatile gas-generating liquids having a flash point below 110 degrees E.”
 

 The defendant contends that this new definition of motor fuel has no effect because section 22 of article 6 of the Constitution, as amended pursuant to Act No-. 219 of 1928, declares that the tax shall be levied on the sale or use of motor fuels, “as defined by law.” The argument is that this qualification “as defined by law,” means “as already defined by law,” and therefore forbids the Legislature to adopt a definition of “motor fuel” different from that which prevailed when the constitutional amendment was adopted, pursuant to Act No. 219 of 1928. In support of the argument, the defendant’s attorney cites Mississippi Mills v. Cohn, 150 U. S. 202, 14 S. Ct. 75, 37 L. Ed. 1052, and La Groue v. City of New Orleans, 114 La. 254, 38 So. 160; but we •do not find the rulings in those cases appropriate to this case. Manifestly, the very purpose of the expression “as defined by law” was to leave it to the Legislature to define motor fuel, and to change the definition as the Legislature might see fit to change it, within reasonable bounds. It is to' be observed that the constitutional amendment declares also that the tax is “to be collected as prescribed by law.” It is certain that the Legislature is thereby
 
 directed
 
 to prescribe the method of procedure, and not
 
 forbidden
 
 to depart from the method already prescribed. And so is the Legislature directed, and not forbidden, to define motor fuel.
 

 The argument that this interpretation of the act of 1932 makes the text broader than the title is founded upon the fact that the title refers to levying the tax “on all gasoline or motor fuel,” etc. It is contended that a volatile gas-generating liquid having a flash point below 110 degrees E. is not- a motor fuel -unless it is “commonly used to propel motor vehicles or motors.” But that is a begging of -the question, because the'definition itself declares that the term “motor fuel” means all volatile gas-generating liquids having a flash point below 110 degrees E. That definition does not go beyond the indication, in the title
 
 *817
 
 of the act, that it is an act to levy a tax upon “motor fuel.”
 

 The argument that the act of 1932, as we have construed it, denies the defendant the equal protection of the law, is founded upon the admission in the record that there are some liquids, such as cleaning fluids, radiator alcohol, grain alcohol, and other liquids, that have a flash point below 110 degrees F., and that could be used in low-compression motors and Diesel engines; and yet none of these liquids is being subjected to the tax levied by Act No. 6 of 1928 (Ex. Sess.), as amended by Act No. 16 of 1932. The reason why such liquids as cleaning fluid, radiator alcohol, and the like, are not regarded by the taxing authorities as motor fuel is that they are never used as motor fuel, and are in fact not motor fuel. They are within the letter of the law, defining motor fuel, but not within its spirit. But, even if the taxing authorities were neglectful of their duty, in failing to collect the tax for sales of cleaning fluid, radiator alcohol; and other volatile gas-generating liquids having a flash point below 110 degrees F., but never used to propel 'motor vehicles or motors, the neglect of the tax-collecting officers would not make the statute violative of the equal protection clause in the Fourteenth Amendment of the Constitution of the United States, as far as the defendant in this case is concerned. The want of uniformity in taxation, to make a tax statute unconstitutional, must be the direct result of the statute itself, and not merely the result of the method of administering it. State v. Maxwell, 27 La. Ann. 722; Missouri, Kansas & Texas Trust Co. v. Smart, Assessor, 51 La. Ann. 424, 25 So. 443; Cummings v. Merchants’ National Bank of Toledo, 101 U. S. 153-164, 25 L. Ed. 903. But there is really no discrimination in this instance, because it is admitted that the tractor distillate which the defendant sells is a motor fuel. It is not “commonly used to propel motor vehicles or motors,” and in fact cannot be used in high compression motors, or in automobiles; but it is used for propelling tractors, and they are motor vehicles. Hence tractor distillate is within the spirit, as well as within the letter, of the law defining motor fuel.
 

 The judgment appealed from is set aside, and it is now ordered, adjudged, and decreed that the state shall recover of and from the defendant, Cedar Grove Refining Company, the tax of 4 cents per gallon on the 302 gallons of tractor distillate, plus the 10 cents inspection fee, 20 per cent, penalty, and 10 per cent, attorney’s fee, and the costs of this suit.